IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CAMILLA MCGHEE,

   Plaintiff,

v.

EWS ASSOCIATES, LLC D/B/A
REGENCY HOME CARE OF NORTH
ATLANTA, SCHUETZ ENTERPRISES,
INC. D/B/A REGENCY HOME CARE
OF NORTH ATLANTA, ERICH
SCHUETZ, AND DANA JOHNSON,

   Defendants.

Civil Action No.


JURY TRIAL DEMANDED

## COMPLAINT FOR DAMAGES

COMES NOW, Camilla McGhee ("Plaintiff" or "Ms. McGhee"), by and through her undersigned counsel, and files this Complaint for Damages against Defendants EWS Associates, LLC d/b/a Regency Home Care of North Atlanta, Schuetz Enterprises, Inc. (collectively "Defendant Employers"), Erich Schuetz ("Mr. Schuetz"), and Dana Johnson ("Ms. Johnson") (collectively, "Defendants"), and shows the Court as follows:

## I.    NATURE OF COMPLAINT

### 1.

Plaintiff brings this action to obtain full and complete relief and to redress the unlawful employment practices described herein.

### 2.

This action seeks declaratory relief, equitable, liquidated, and compensatory damages, along with attorney's fees and costs, for Defendant Employers' failure to pay federally mandated overtime wages to Plaintiff, in violation of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §201 et seq. (hereinafter the "FLSA") during Plaintiff's employment with Defendants. Plaintiff also brings a retaliation claim.

## II.    JURISDICTION AND VENUE

### 3.

The jurisdiction of this Court is invoked pursuant to 29 U.S.C. §216(b), and 28 U.S.C. §1331.

### 4.

Defendant Employers do business in and are engaged in commerce in the State of Georgia and are subject to jurisdiction over the claims asserted herein. Venue is proper in this district pursuant to 29 U.S.C. § 1391(b) because

Defendants reside in this district and a substantial part of the events and omissions that give rise to Plaintiff's claims occurred in this district.

### III.   **PARTIES**

5.

Plaintiff is a Female citizen of the United States of America and is subject to the jurisdiction of this Court.

6.

Plaintiff was an "employee" of Defendant Employers, as that term has been defined by the FLSA, 29 U.S.C. § 201 et seq., 29 U.S.C. § 203(e). Defendants are employers within the meaning of FLSA § 203(d) and are not exempt under the Act.

7.

Defendant Employers are private employers engaging in interstate commerce and, upon information and belief, their gross revenues exceed $500,000 per year.

8.

At all times relevant, Defendant Employers were qualified and licensed to do business in Georgia, and at all times material hereto have conducted business within this District.

9.

Defendant Employers may be served with process by delivering a copy of the summons and complaint to their Registered Agent, Erich W. Schuetz, located at 1750 Old Spring House Ln, Suite 203, Atlanta, GA, 30338, USA.

## IV.   FACTUAL ALLEGATIONS

10.

From December 2020 to on or about December 9, 2021, Plaintiff was employed by Defendant Employers as a Caregiver and was paid on an hourly basis.

11.

Defendant Employers, EWS Associates, LLC and Schuetz Enterprises, Inc., acted as a single employer of Plaintiff.

12.

The companies were highly integrated with respect to ownership and operations. Erich Schuetz owns both companies, both companies do business as Regency Home Care of North Atlanta, and both companies provide caregiving services to disabled clients.

13.

Regency Home Care is a certified home care agency that employs caregivers

and home health aides who provide residential care for adults with a variety of needs.

14.

Plaintiff's primary duty was the performance of non-exempt work, specifically providing caregiving services to Defendants' customers. Plaintiff did not have the authority to supervise, hire, fire, or discipline any employees. Plaintiff exercised limited independent judgment or control over the scope of her work or performance of her duties. Her role was strictly limited to the observation of assigned patients and helping those patients with basic household services.

15.

Plaintiff regularly worked an amount of time that was more than forty (40) hours in given workweeks and was not paid the overtime wage differential for hours worked over 40 in such weeks.

16.

Defendant Employers agreed to compensate Plaintiff an hourly rate of $12 per hour. Her weekly paychecks stated her hourly payrate of $12 per hour.

17.

Without prior warning to Plaintiff, Defendant Employers did not pay her the agreed upon $12 per hour rate, and instead changed Plaintiff's payrate from week

to week, raising and lowering her hourly rate based on how many hours over 40 she had worked.

18.

Consequently, the amount of Plaintiff's paychecks fluctuated from week to week.

19.

Plaintiff regularly worked in excess of forty (40) hours per week for Defendants, reporting the hours via a manual time sheet that was approved by Schuetz. Despite reporting these hours, Defendants failed to compensate Plaintiff overtime pay.

20.

For example, Plaintiff worked seventy-one hours from May 1, 2021, to May 7, 2021. She was paid at an hourly pay rate of $9.85, and her total pay was $703.69. The following week, Plaintiff worked eighty-one hours. She was paid at an hourly pay rate of $9.58, and her total pay was $793.45. From June 19, 2021, to June 25, 2021, Plaintiff worked 60 hours. She was paid at an hourly rate of $10.29, and her total pay was $605.43. And the week after that, Plaintiff worked forty-eight hours. She was paid at an hourly rate of $11.08, and her total pay was $496.72.

21.

However, when she worked 36 hours, between September 4, 2021, and September 10, 2021, she was paid an hourly rate of $12 per hour rate, and her total pay was $441.44.

22.

During Plaintiff's employment with Defendant Employers, Defendants suffered or permitted Plaintiff to work in excess of 40 hours in given workweeks without receiving overtime compensation.

23.

Plaintiff's paychecks were direct deposit, so she didn't notice the irregularities until she received notice that her hourly rate was changing.

24.

On September 20, 2021, Mr. Schuetz e-mailed Plaintiff to "recognize" her "continued commitment" to her job and client. In the e-mail, Mr. Schuetz explained that she "normally work[s] a 60 hour week with [the client] making a gross wage of $720, or a base hourly rate of $10.29. Effective next week I am raising your base rate to $10.75 per hour, which will gross $752.50 per week. That's an increase of $32.50 per week, or a little over $0.50 per hour." Mr. Schuetz also wrote that his company was instituting a new policy with a "Supplemental Wage Agreement" that he expected Plaintiff to sign.

25.

From September 27, 2021, until she was terminated, Plaintiff was paid $10.75 per hour, and was paid the appropriate amount of overtime compensation.

26.

Upon learning that she was receiving a "raise" but that the change in her pay amounted to an hourly rate of $1.25 less than she was making before ($12 per hour), Plaintiff looked through her old paystubs and began asking for an explanation of her check amounts.

27.

Dana Johnson, Plaintiff's supervisor and the person in charge of hiring and scheduling Plaintiff, explained that Mr. Schuetz does not pay overtime compensation, and that Defendant Employers do not pay overtime compensation. Ms. Johnson was the person who had told Plaintiff at the time of hiring that her hourly rate was going to be $12 per hour. Any time Plaintiff asked her for more information about her checks, Ms. Johnson would end the conversation.

28.

Plaintiff called Mr. Schuetz and asked him to explain her previous paychecks, why a lower hourly payrate was considered a raise, why her checks were now being calculated differently (a straight rate per hour calculation plus overtime, rather than changing from week to week, as it had been before), and why

she had not received overtime pay prior to September. From September to November, Plaintiff continued to ask Mr. Schuetz to call her back and provide her with information regarding her paychecks.

29.

In November, Plaintiff sent Mr. Schuetz an e-mail asking when she could come into the office to discuss her paycheck rates/totals/calculations, so he could explain her paychecks to her in person.

30.

On or about December 9, 2021, Ms. Johnson called Plaintiff and told her to not to go to work the following day, Friday, because there were going to be schedule changes.

31.

Plaintiff waited for four days but did not receive a phone call back from Ms. Johnson.

32.

That Monday, Ms. Johnson called her again to remind her to not go to work. Plaintiff complied.

33.

Eventually, due to the lack of communication, Plaintiff tried to call and text Ms. Johnson, but Ms. Johnson did not return her messages.

34.

Plaintiff then emailed Mr. Schuetz to ask what was going on, why hasn't she heard from them, and where does she stand with the company.

35.

 Mr. Schuetz called Plaintiff and he was argumentative. He accused Plaintiff of breaking a rule but would not elaborate any further. Plaintiff had not broken any rules.

36.

On or about December 9, 2021, Defendant Employers terminated Plaintiff's employment.

37.

On or about December 31, 2021, Mr. Schuetz contacted Plaintiff and told her that he had money for her.

38.

He told Plaintiff that the Georgia Department of Labor had audited them for a time period that included December 3, 2020, to April 3, 2021. It was determined that Defendant Employers owed Plaintiff overtime wages for that time period.

39.

Following the Georgia Department of Labor's finding, Defendant remitted an amount of $799 as overtime pay to Plaintiff, covering those weeks she worked

between December 3, 2020, and April 3, 2021. However, Defendant Employers did not pay her based on the $12 per hour payrate, nor did they pay her liquidated damages. The memo line of the check stated the money was a "Payroll adjustment".

40.

Defendant Employers also challenged Plaintiff's application for unemployment, preventing her from receiving financial support through the holidays.

41.

Because Defendant Employers were unable to show the Georgia Department of Labor that Plaintiff was terminated for cause, her application for unemployment compensation was granted.

42.

Plaintiff was paid an hourly rate for all hours worked, without overtime compensation calculated at one and one-times her regular rate of pay for hours she worked in excess of (40) hours in given workweeks.

43.

Defendants knew or had reason to know that Plaintiff regularly worked in excess of 40 hours in workweeks without overtime compensation.

44.

For example, Plaintiff sent her timesheets to Mr. Schuetz and Ms. Johnson, and Mr. Shuetz managed payroll. Both communicated with her regarding her timesheets and paychecks. Plaintiff had asked Ms. Johnson about overtime pay and had been told that she would not be receiving it. And Mr. Schuetz and Defendant Employers had previously been audited by the Georgia Department of Labor.

45.

Although Defendants purport to provide a legitimate non-discriminatory reason for the adverse actions, any reason given for Plaintiff's termination is pretext for unlawful retaliation in response to her protected activity.

46.

Plaintiff has suffered damages, including lost wages and emotional distress as a result of Defendant's retaliatory action, for which she is entitled to recover.

47.

Although Defendants purport to provide a legitimate non-discriminatory reason for the adverse action, this reason is a pre-text.

## CLAIMS FOR RELIEF

## COUNT I:  VIOLATION OF THE OVERTIME WAGE REQUIREMENT OF THE FAIR LABOR STANDARDS ACT

### 48.

Plaintiff re-alleges preceding paragraphs 10-47 as if set forth fully herein.

### 49.

Defendants have violated the FLSA, 29 U.S.C. § 201, <u>et seq</u>. including but not limited to 29 U.S.C. § 207, by failing to pay overtime wages for hours Plaintiff worked in excess of (40) hours in given workweeks.

### 50.

Defendants willfully and wantonly disregarded Plaintiff's  rights, and Defendants' retaliation against Plaintiff was untertaken in bad faith.

### 51.

The FLSA, 29 U.S.C. § 207, requires employers to pay non-exempt employees one and one-half times the regular rate of pay for all hours worked in excess of (40) hours in a workweek.

### 52.

Defendants knew or had reason to know Plaintiff regularly worked over 40 hours in workweeks without overtime compensation.

53.

Defendants' actions, policies and/or practices as described above violate the FLSA's overtime requirement by regularly and repeatedly failing to compensate Plaintiff at the required overtime rate.

54.

Defendants knew, or showed reckless disregard for the fact that Defendants failed to pay Plaintiff overtime compensation in violation of the FLSA.

55.

Pursuant to the FLSA, 29 U.S.C. § 216, Plaintiff is entitled to recover the unpaid overtime wage differential, liquidated damages in an equal amount to unpaid overtime, attorneys' fees, and the costs of this litigation incurred in connection with these claims.

## COUNT II:  VIOLATION OF THE ANTI-RETALIATION PROVISION OF THE FAIR LABOR STANDARDS ACT

56.

Plaintiff re-alleges preceding paragraphs 10-47 as if set forth fully herein.

57.

Plaintiff engaged in protected activity by opposing Defendants' willful refusal to pay overtime compensation to an employee. Plaintiff therefore engaged in protected activity under the FLSA.

58.

Defendants responded to Plaintiff's protected activity by terminating her employment.

59.

29 U.S.C. § 215(a)(3) makes it unlawful for any person "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA], or has testified or about to testify in any such proceeding, or has served or is about to serve on an industry committee."

60.

The FLSA's definition of the word "person" includes "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons."

61.

Defendants were prohibited from retaliating against Plaintiff because she engaged in activity protected under the FLSA.

62.

Defendants' actions, policies and/or practices as described above violate the FLSA's anti-retaliation provision, 29 U.S.C. § 215(a)(3).

63.

Defendants knew that their conduct violated the FLSA, and Defendant acted with malice or with reckless indifference to Plaintiff's federally protected rights.

64.

Defendants' violations of the FLSA were willful and in bad faith.

65.

Plaintiff engaged in statutorily protected activity under the FLSA by opposing an employment practice she believed was unlawful under the FLSA.

66.

Plaintiff's statutorily protected activity was the determinative factor in Defendants' decision to terminate her employment.

67.

As a direct and proximate result of the retaliation, Plaintiff has sustained damages, including lost wages and emotional distress, for which she is entitled to recover from Defendants.

68.

Pursuant to the FLSA, 29 U.S.C. § 216, Plaintiff is entitled to recover actual and liquidated damages, as well as compensatory damages, attorneys' fees, and the costs of this litigation incurred in connection with these claims.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court:

(A)    Grant Plaintiff a trial by jury as to all triable issues of fact;

(B)    Enter judgment against Defendant and award Plaintiff unpaid wages pursuant to the FLSA, 29 U.S.C. §§ 206(d), 207, and 216, liquidated damages as provided by 29 U.S.C. § 216, pre-judgment interest on unpaid wages, court costs, expert witness fees, and reasonable attorneys' fees pursuant to 29 U.S.C. § 216, such legal or equitable relief as may be appropriate to effectuate the purposes of 29 U.S.C. § 215(a)(3), and all other remedies allowed under the FLSA;

(C)    Grant declaratory judgment declaring that Plaintiff's rights have been violated and that Defendant willfully violated the FLSA;

(D)    Grant conditional certification and provide notice of this action to all similarly situated individuals;

(E)    Grant Plaintiff leave to add additional state law claims if necessary; and

(F)    Award Plaintiff such further and additional relief as may be just and

appropriate.

This 3rd day of June, 2022.

**BARRETT & FARAHANY**

s/ *Catherine A. Gavrilidis*

Catherine A. Gavrilidis
Georgia Bar No. 565343

*Counsel for Plaintiff Camilla McGhee*

P.O. Box 530092
Atlanta, Georgia 30353
(404) 214-0120
catherine@justiceatwork.com